IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES E. WALKER, #R02343, <br><br>            Plaintiff, <br><br>v. <br><br>KIMBERLY BUTLER, <br>RICHARD HARRINGTON, <br>SALVADOR GODINEZ, <br>MICHAEL SMITH, <br>DAVID CHILDERS, <br>TIMOTHY MORRIS, <br>R.D. MOORE, <br>JAY MCMILLAN, and <br>EUGEN SIMPSON, <br><br>            Defendants. | Case No. 19-cv-0446-SPM |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on the motion for summary judgment filed by Defendants Smith, Morris, Butler, Harrington, Godinez, and Childers. (Docs. 58, 59). Defendants Moore, McMillian, and Simpson join in the motion. (Docs. 96, 98). Plaintiff Walker filed a response in opposition. (Doc. 60). On March 3, 2021, the Court held an evidentiary hearing.[1] *See Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). For reasons set forth below, the motion for summary judgment is granted in part and denied in part.

### BACKGROUND

Walker, an inmate of the Illinois Department of Corrections ("IDOC") who is currently housed at Lawrence Correctional Center, commenced this action by filing a complaint pursuant to 42 U.S.C. § 1983 alleging he was retaliated against and his property confiscated without due

---

[1] The evidentiary hearing was originally scheduled for February 10, 2021. Because of technical difficulties with the video equipment at Lawrence Correctional Center, Plaintiff Walker, through no fault of his own, was unable to appear. The hearing was cancelled and reset. (Doc. 103).

process while at Menard Correctional Center ("Menard"). (Doc. 1). On December 4, 2019, the Court granted Walker's motion for leave to file an amended complaint. In the First Amended Complaint, Walker alleges that in November of 2013, under Lieutenant Childers' supervision, Correctional Officers Moore, Morris, and Smith selectively shook down his cell, confiscated property, and ordered Walker to the shower to be strip searched in retaliation for filing grievances. (Doc. 36). In April 2014, he was again subjected to a retaliatory shakedown conducted by Correctional Officer McMillan, and in September 2014, his cell was searched again and property taken by an unknown officer.[2] Walker claims that he filed grievances regarding the improper shakedown of his cell, alerting prison officials, but Grievance Officer Simpson, Wardens Harrington and Butler, and Director Godinez retaliated against him by denying grievances. Following preliminary review of the First Amended Complaint pursuant to 28 U.S.C. § 1915A, Walker is proceeding with the following claim (Doc. 34):

> **Count 1:** **First Amendment claim against Godinez, Butler, Harrington, Smith, Moore, Childers, Morris, McMillan, and Simpson for retaliating against Walker for filing grievances.**

Defendants filed for summary judgment arguing that Walker failed to exhaust his administrative remedies prior to commencement of this suit, as required pursuant to 42 U.S.C. § 1997e(a). They claim that there are four grievances relevant to the conduct alleged in the First Amended Complaint. The grievances are dated November 13, 2013, April 20, 2014, September 16, 2014, and October 6, 2014. (Doc. 59, p. 2). Defendants state that the only grievance that was properly submitted and appealed to the Administrative Review Board was the grievance dated April 20, 2014. This grievance, however, does not claim that any of the Defendants participated in the improper shakedown on April 14, 2014, or that Defendants knew about and denied grievances relating to the alleged retaliatory shakedowns. The other three grievances were not appealed to the Administrative Review Board in accordance with grievance procedures. Because Walker did not

---

[2] The unknown officer, John Doe 2, was dismissed without prejudice on August 27, 2020. (Doc. 68).

properly appeal any grievance that sufficiently describes Defendants' involvement in retaliatory conduct, he has failed to exhaust his administrative remedies.

In his response, Walker argues that he did not fully identify Defendants in grievances because during shakedowns at Menard inmates are forced to form a line with their heads and eyes down towards the ground. (Doc. 60, pp. 8, 12). This practice prevented him from identifying prison officials. Walker also contends that his grievances provide sufficient detail to place Defendants on notice of his claims. He argues he is only required to set out a short and plain statement of his claims, and therefore, he is not required to set out every single instance in which Defendants may have mistreated him or acted in retaliation. (*Id.* at 11). Finally, Walker claims that he was prevented from fully exhausting his remedies because staff at Menard failed to respond to his grievances, which made the grievance process unavailable to him. (*Id.* at pp. 5, 11).

LEGAL STANDARDS

*I. Summary Judgment*

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). On summary judgment, the district court's role is generally not to weigh evidence or judge witness credibility. When deciding a motion for summary judgment on the issue of exhaustion, however, the Seventh Circuit explains that a different standard applies. *Pavey v. Conley*, 544 F.3d at 739-41. The Seventh Circuit in *Pavey* held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are to be determined by the judge, not a jury. *Pavey*, 544 at 740-41. A summary judgment motion on exhaustion grounds typically requires a hearing to decide any contested issues regarding exhaustion, and a judge may make limited findings at that time. *Id*. at 742.

## II. Exhaustion of Administrative Remedies

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). The PLRA states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion of available administrative remedies must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. The statutory purpose of the PLRA is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). This allows the prison administration an opportunity to fix the problem or to reduce the damages and perhaps shed light on factual disputes that may arise in litigation even if the prison administration's solution does not fully satisfy the prisoner. *See Pozo,* 286 F.3d at 1023-24. To allow otherwise would frustrate the purpose of the grievance process. *See Porter v. Nussle*, 534 U.S. 516, 526 (2002).

## III. Grievance Procedures

As an inmate in the custody of IDOC, Walker was required to follow the grievance procedure laid out in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, *et seq*. Under the Code, there are two pathways an inmate can take with regard to grievances. If the grievance pertains to an issue that is not an emergency, the inmate must follow the standard 3-step

grievance process. *Id.* at § 504.810(a ). The offender must first file a grievance with the Counselor within 60 days of the incident giving rise to the complaint. *Id.* at § 504.810(a). The grievance form must contain factual details regarding what happened, when, where, and the name of each person who involved in the complaint. *Id.* at § 504.810(c). While this provision does not preclude an offender from filing a grievance when the names of individuals are not known, he or she must include as much descriptive information about the person as possible. *Id.*

Grievances that are unable to be resolved through the Counselor are then sent to the Grievance Officer. 20 ILL. ADMIN. CODE § 504.820(a). The Grievance Officer considers the grievance and reports "his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." *Id.* at § 504.830(e). The Chief Administrative Officer then reviews the findings and recommendations of the Grievance Officer and advises the offender of his or her decision in writing. *Id.*

Finally, if the inmate is not satisfied with the response from the Chief Administrative Officer ("CAO"), he or she can file an appeal the decision to the Administrative Review Board ("ARB"). 20 ILL. ADMIN. CODE § 504.850(a). The appeal must be received by the ARB within 30 days after the date of the CAO's decision. *Id.* The ARB then must submit to the Director a written report of its findings and recommendations. *Id.* at § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, when reasonably feasible under the circumstances." *Id.* at § 504.850(e).

The other path an inmate can take is to request a grievance be handled on an emergency basis by forwarding the grievance directly to the CAO. 20 ILL. ADMIN. CODE § 504.840. Under the version of the Code in effect at the time Walker submitted his grievances, if the CAO determines "there is a substantial risk of imminent personal injury or other serious or irreparable

harm to the offender, the grievance shall be handled on an emergency basis." 20 ILL. ADMIN. CODE § 504.840(b) (2013). The CAO shall then expedite the review of the grievance and inform the inmate as to what action shall be taken. *Id.* at § 504.840(c) (2013).

## ANALYSIS

It is not disputed that there are four grievances relevant to the claims in this case dated, November 13, 2013, April 20, 2014, September 16, 2014, and October 6, 2014. The Court will address each grievance in turn.

### I. November 13, 2013 Emergency Grievance

Defendants argue that the November 13, 2013 emergency grievance was not fully grieved because Walker improperly appealed the grievance to the ARB on two different occasions. (Doc. 59, p. 3). The first time the ARB received the November 13, 2013 emergency grievance, the ARB returned the grievance because Walker failed to provide a copy of the grievance with a Counselor's response and the responses from the Grievance Officer and CAO. (Doc. 36, p. 16). The second time, the ARB received the grievance on October 8, 2014, and determined that the grievance was not timely submitted. (*Id.* at p. 36).

At the hearing, Walker confirmed that he appealed the November 13, 2013 emergency grievance twice, once before the Counselor and Grievance Officer responded and then once after receiving only a Counselor's response. (*See* Doc. 59-1, p. 21; Doc. 36, p. 45). He argues that after he received the grievance back from Warden Harrington with the determination that the grievance was not an emergency, he resubmitted the grievance through the proper channels to the Counselor. However, he did not receive a response for eight months. He testified at the hearing that he wrote affidavits and letters asking about the grievance, and eventually receive the counselor response in June of 2014. After receiving the counselor response, he immediately sent the grievance to the next procedural level, and then again, did not receive a response.

The current issue before the Court regarding the procedures for exhausting an emergency

grievance was addressed by the Seventh Circuit in *Williams v. Wexford Health Sources,* 957 F. 3d 828, 832-833 (7th Cir. 2020). Prior to amendments to Section 504.840 of the Illinois Administrative Code adopted in 2017, Illinois grievance procedures were silent as to "what should happen if the warden concludes that a grievance does *not* present an emergency." *Id.* at 832. "Nowhere in the Code did it say that an inmate who invoked the emergency process in a non-frivolous way had to start all over again with the standard procedure whenever the warden concluded that no emergency existed." *Id.* at p. 833. Accordingly, the Seventh Circuit ruled in *Williams* that the ARB and the warden had effectively "move[d] the goal posts" by requiring the inmate to resubmit his grievances under normal procedures once the warden determined that the grievance was nonemergent. *Id.* at p. 835.

As in *Williams,* Walker submitted the November 13, 2013 emergency grievance directly to the Chief Administrative Officer, Warden Harrington. *See* 20 ILL. ADMIN. CODE § 504.840 (2013). Warden Harrington determined that the grievance was not an emergency and returned the grievance to Walker with instructions to "submit this grievance in the normal manner." (Doc. 36, p. 47). Walker eventually appealed the grievance for the first time in April 2014, without receiving a response from the Counselor, Grievance Officer, and CAO. The ARB responded, without reviewing the grievance on the merits or addressing the emergency determination or timeliness of the grievance. The ARB informed Walker "that his appeal was missing the materials that would have been required under the standard procedure: the written Offender's grievance, the counselor's response, and the Grievance Officer and warden's responses." *Id.* By doing so, the ARB effectively "created a new procedural requirement for [Walker] — namely, to go back and recommence the grievance process under the standard procedure." *Id.* Because "[g]rievance procedures must be transparent," Walker was not required to follow these procedures created in the middle of his case. *Id.* at 834. Accordingly, Walker exhausted the administrative remedies that were available to him at the time he submitted the November 13, 2013 emergency grievance. *See also Jones v. Bayler,*

843 F. App'x 283, 285 (7th Cir. 2021) (holding that the plaintiff was not required to appeal the warden's "no emergency" rulings prior to April 1, 2017).

Defendants further argue that, if the Court considers the November grievance fully exhausted, Defendant Smith is the only Defendant named as acting in retaliation, and so, the case should be dismissed as to the other Defendants. The Court disagrees. The November 13, 2013 emergency grievance provided sufficient notice to prison officials that Walker believed that the shakedown of his cell and confiscation of his property by Menard staff in November of 2013 were done for the purpose of harassment and retaliation. Specifically, in the grievance, Walker grieves that after filing multiple grievances, he started to be harassed by Officer Smith. (Doc. 36, p. 47-48). He states that he fears the retaliation by "Officer Smith" and Warden Harrington, Major Moore, and Lieutenant Childers[3] in the form of "harassment and unreasonable shakedown of my person and cell and illegally confiscate my property in order to intimidate grievant from filing grievances…" (*Id.*). Walker also claims that "Officer Smith [was] walking around harassing and intimidating inmates." (*Id.*). He then goes on to recount the shakedown of his cell and confiscation of his property that occurred on November 13, 2013. Walker claims that out of seven cells that were searched that day, he was the only one missing anything of value, and he fears for his health, safety, and life. (*Id.*).While the grievance does not specifically state that Defendants Moore, Childers, or Morris[4] took part in the shakedown, he describes the shakedown as being conducted by "East Cell House 1 a.m. to 3 p.m. shift officials, officer, and staff." He also describes talking to Lieutenant Childers after his cell was searched.

Based on these details, the Court finds Walker met the requirements of the grievance procedures by describing what happened and those involved, some by name and some by shift assignment. He is not required to put each individual on notice of a claim against him. *See Jones*

---

[3] Walker also names other individuals who are not parties to this case in the November 13, 2013 emergency grievance.
[4] Defendant Morris is not named in the grievance.

*v Bock,* 549 U.S. 199, 219 (2007) ("the primary purpose of a grievance is to alert prison officials to a problem, not provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation") (internal citations and quotations omitted). Therefore, the November 13, 2013 emergency grievance fully exhausted his retaliation claims against Defendants Moore, Morris, Childers, and Smith, all of whom Walker claims directly took part in the shakedown in November of 2013.[5]

The November 13, 2013 emergency grievance does not, however, grieve Walker's retaliation claims against the grievance officials: Harrington, Butler, Simpson, and Godinez. The grievance does not contain any allegations regarding the retaliatory denial or mishandling of grievances on the topic of the shakedown of his cell by Harrington, Godinez, Butler, or Simpson. It also does not name or describe Godinez, Butler, or Simpson.

The grievance does name Warden Harrington, but not for conduct alleged in the First Amended Complaint. In the grievance, Walker states that the grievance is brought against Warden Harrington for fear of retaliatory harassment and unreasonable shakedowns. (Doc. 36, p. 47). But that is not what is alleged in the First Amended Complaint. Walker claims Harrington was aware of the November 13, 2013 shakedown and confiscation of property because of the November emergency grievance filed, which he then denied in further retaliation. (Doc. 36, pp. 10-11, 12, 13). Therefore, it is impossible for the very grievance that Walker claims was denied in retaliation by Harrington, to contain the conduct alleged. It had not yet occurred. Consequently, the November 13, 2013 emergency grievance does not cover Walker's claims against Harrington, Simpson, Godinez, or Butler.

Finally, the grievance also does not grieve claims against Defendant McMillan, who's

---

[5] During the hearing, Defense Counsel questioned Walker regarding inconsistencies between the grievance, which alleges that Defendant Smith conducted the search and that there was not a major, lieutenant, or sergeant present during the shakedown, and the First Amended Complaint, which alleges that the shakedown was supervised by Lieutenant Childers. Whether Childers was actually present during the shakedown and inconsistencies in Walker's allegations goes to the merits of his claim, more suited for a motion for summary judgment on the merits.

alleged conduct took place in April 2014, after this grievance was filed.

## II. *April 20, 2014 Grievance*

Defendants do not dispute that Walker fully completed the grievance process as to the April 20, 2014 grievance. The issue is whether the grievance sufficiently provided notice to the prison that Defendant McMillan participated in the improper shakedown on April 14, 2014. (Doc. 59, p. 3). The Court finds that it does.

In the grievance, Walker grieves that he fears retaliatory harassment, unreasonable shakedowns, and illegal confiscation of property by "the east cell house officer for filing this grievance against" Defendants Warden Harrington, Major Moore, and Lieutenant Childers.[6] (Doc. 36, p. 24-25). He then goes on to describe the shakedown of his cell on April 14, 2014. Walker states that during the shakedown he was told to keep his head down so that he could not identify the officials involved. He asks for an order of protection against the "shakedown crew[.]" (*Id.*). While Walker does not specifically name McMillan in the grievance, the individual who he alleges searched his cell on April 14, 2014, Walker testified at the hearing and stated in the grievance, his head was kept down during the shakedown. Thus, he was unable to identify any of the officers involved at the time. As required, the grievance sufficiently describes the event and those involved. It notifies the prison that Walker believed the shakedowns of his cell were being improperly conducted and feared further misconduct by the "shakedown crew" and retaliation.

This grievance, however, does not grieve Walker's First Amendment claims against the other Defendants. Walker states that the grievance is being filed against Defendants Warden Harrington, Major Moore, and Lieutenant Childers but does not include any information regarding their conduct, as alleged in the First Amended Complaint. (Doc. 36, p. 24). Walker's allegations against Childers and Moore are limited to the retaliatory shakedown on November 13, 2013, and his claim against Harrington, as discussed, is for denying his grievances regarding unlawful

---

[6] Walker also names other individuals who are not parties to this case in the April 20, 2014 grievance.

shakedowns in retaliation for filing grievances. The grievance fails to meet grievance procedure by not providing a description of events involving Defendants Butler, Harrington, Godinez, Smith, Moore, Childers, Morris, and Simpson or asserting "some shortcoming" in their conduct. *See Shaw v. Frank*, 288 F. App'x 299, 302 (7th Cir. 2008) (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). *Also see Parker v. Walker,* No. 06-779-CJP, 2009 WL 1209066, at *4 (S.D. Ill. May 4, 2009) (holding that an inmate failed to grieve retaliation claims because none of his grievances "claim that defendants denied his wheelchair grievance due to retaliation").

### III. September 16, 2014 and October 6, 2014 Grievances

Defendants argue that the September 16, 2014 and October 6, 2014 grievances also fail to exhaust Walker's claims. Specifically, Walker did not appeal the September 16, 2014 grievance to the ARB and the October 6, 2014 grievance was not appealed in a timely manner. (Doc. 59, p. 3). Walker claims that he timely mailed both grievances by placing them in the cell bars in an envelope to be mailed to the ARB. (Doc. 60, p. 3-4). Although the grievances were denied by the ARB as untimely, he argues he cannot control when the mail is picked up and sent. (*Id.*).

Even if it is true that Walker was prevented from timely appealing his grievances to the ARB by prison staff, the Court must "also look at whether the content of the grievances was sufficient to cover [Walker's] claims against Defendants. *Russell v. Wexford Health Sources, Inc.,* 2021 WL 793994, at *3 (S.D. Ill. Mar. 2, 2021) (citing *See Sapp v. Kimbrell*, 623 F. 3d 813, 823-24 (9th Cir. 2010)). Improper handling by prison staff of the grievances does not make any grievance filed retrospectively adequate; it merely excuses failure to take any further steps from the point that would normally be required. *See Sapp,* 623 F. 3d at 23-24 (holding that in order show that his attempts to file grievances were hindered, the prison must establish that "he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court"). As Defense Counsel argued at the hearing, these two grievances grieve of the items that were taken in during shakedowns of

Walker's cell. They are devoid of any allegation of retaliatory conduct, which is the claim in this case. Therefore, these grievances do not contain information sufficient to put prison official on notice of retaliation issues by Menard staff.

## DISPOSITION

For the reasons stated above, the Motion for Summary Judgment (Doc. 58) is **GRANTED in part** and **DENIED in part.** Defendants Butler, Harrington, Godinez, and Simpson are **DISMISSED without prejudice**.

This matter shall proceed on Walker's claims (Count 1) against the remaining Defendants Smith, Childers, Moore, Morris, and McMillan. The stay on merits discovery is **LIFTED** and the parties can proceed with discovery on the merits. A new scheduling order will be entered by separate order.

**IT IS SO ORDERED.**

**DATED:   March 8, 2021**

    _s/ Stephen P. McGlynn_
**STEPHEN P. MCGLYNN**
**United States District Judge**